**In re Christopher BOLEN, Debtor.**

**Christopher Bolen, Plaintiff,**

**v.**

**Sallie Mae Servicing Corp., Defendant.**

**Bankruptcy No. 94–10640.**
**Adversary No. 00–1060.**

United States District Court,
D. Vermont.

Oct. 11, 2002.

128

Christopher Bolen, Cambridge, VT, pro se.

Tavian M. Mayer, Esq., Mayer & Mayer, South Royalton, VT, for defendant.

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

COLLEEN A. BROWN, Bankruptcy Judge.

Defendant Sallie Mae Servicing Corp. filed a Motion for Summary Judgment in the present Adversary Proceeding, alleging there is no genuine issue as to any material fact to deny the non-dischargeability of Plaintiff Christopher Bolen's student loans (doc. # 34–1). Plaintiff opposes Defendant's Motion (doc. # 50–1) and cross moves for summary judgment arguing that his loans are not "student loans" within the meaning of 11 U.S.C. § 523(a)(8) and that the loans are, therefore, dischargeable (doc. # 49–1). This Court has jurisdiction over the subject Motions pursuant to 28 U.S.C. §§ 157 and 1334. Moreover, this adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Based on the papers submitted and for the reasons stated below, the Court GRANTS Defendant's Motion and DENIES Plaintiff's Cross–Motion.

### I. BACKGROUND

While attending law school, Plaintiff–Debtor, Christopher Bolen, (hereinafter, "Debtor") took out two loans through the Law Access Program:

1.) $5,000, evidenced by a promissory note signed July 7, 1988, see Ex. # 1, attached to Debtor's Mem. Supp. Summ. J. and in Opp'n Def.'s Mot. Summ. J. (docs. # 51–1 and # 52–1); and

2.) $10,500, evidenced by a promissory note signed June 15, 1989, see Ex. # 2, attached to Debtor's Mem. Supp. Summ. J. and in Opp'n Def.'s Mot. Summ. J. (docs. # 51–1 and # 52–1).

Both loans are Law Access Loans (LAL). See Ex. # 1 and Ex. # 2, supra. The Lender under both promissory notes was Norwest Bank South Dakota. See id. The notes indicated that HEMAR Insurance Corporation of America (HICA) was the entity that would insure the LALs. See id.

The Law Access program is a national loan program for legal education. See Ex. # 3 at 5[1], attached to Debtor's Mem. Supp. Summ. J. and in Opp'n Def.'s Mot. Summ. J. (docs. # 51–1 and # 52–1) (hereinafter, the "Law Access Brochure"). Through Law Access, a law student could

---

1. The Court notes with disapproval that the Debtor submitted only the cover page and page number 5 of Law Access's 1988–1989 brochure. Clearly, pages 1 through 4 are not provided; it is unclear if there are additional pages to the packet after page 5.

secure one of three different types of loans: (1) a guaranteed student loan; (2) a supplemental loan; and/or (3) a law access loan. *See id.* The first two types of loans are federally subsidized, but the third is not. *See id.* "Law Access is coordinated by Law School Admission Council/Law School Admission Services (LSAC/LSAS).... LSAC/LSAS works with a number of government and financial organizations to deliver the loan program." *Id.* Moreover, the Law Access Brochure identified other entities involved in the loan program: (1) the Higher Education Assistance Foundation (HEAF) as the party that guarantees the federal loans; (2) HEMAR Service Corporation of America (HSCA) as the party that service all loans; and (3) Norwest Bank of South Dakota as the lender. *See id.* In total, there were five different parties to the Law Access program.

Debtor's sole basis for opposing Defendant's Motion for Summary Judgment and for cross-moving for summary judgment in his favor is that the two loans are not "educational loans" within the meaning of 11 U.S.C. § 523(a)(8).[2] Conversely, the Defendant's position is that the two loans fall squarely within the parameters of § 523(a)(8), and are in fact non-dischargeable.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 247, 106 S.Ct. 2505. Factual disputes that are irrelevant or unnecessary are not material. *See id.* Furthermore, materiality is determined by assessing whether the fact in dispute, if proven, would satisfy a legal element under the theory alleged or otherwise affect the outcome of the case. *See id.* The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. *See Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990).

### B. *The Purpose of 11 U.S.C. § 523(a)(8)*

While it is well-accepted that the purpose of the bankruptcy laws is to provide the honest debtor with a fresh start, *see, e.g., Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), "there are circumstances where giving the debtor a fresh start in life is not the paramount concern and protection of the creditor becomes more important." *In Re Renshaw,* 222 F.3d 82, 86 (2d Cir.2000). Thus, Congress has created "exceptions to

**2.** The Debtor has indicated he will be filing a motion for summary judgment on the ground of undue hardship, but that motion is not yet before the Court.

the general rule that debts may be discharged in bankruptcy.... These exceptions to discharge, which further a variety of social policies, are narrowly construed." *Id.* Moreover, a creditor claiming an exception to discharge bears the burden of proving, by a preponderance of the evidence, that its claim is exempt. *See id.* (citing *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Congress has set forth an exception to bankruptcy discharge for certain forms of educational debt in Title 11 of the United States Code:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> ....
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an education benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8). Social policy arguments clearly played a role in Congress implementing this exception:

> Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers. Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start.

*Renshaw,* 222 F.3d at 87 (further citations omitted). In *Renshaw,* the Second Circuit provided an instructive summary of the evolution of § 523(a)(8), discussing the amendments to the section since the enactment of the Bankruptcy Reform Act of 1978, and explaining that each amendment *expands* the exception to discharge. *See id.* at 87–88.

### C. Analysis of The Law Access Program by the Ninth Circuit B.A.P.

While the Second Circuit has provided a well-versed history of § 523(a)(8), it has not addressed the Law Access program with such depth. However, the Ninth Circuit Bankruptcy Appellate Panel (B.A.P.) had the opportunity to analyze the Law Access program and loans made under that program. *See In Re Pilcher,* 149 B.R. 595 (9th Cir. BAP 1993). Its decision is instructive in this case.

In *Pilcher,* the debtor had taken out a loan under the Law Access program. *See* 149 B.R. at 596. When she later filed for bankruptcy, she sought to discharge her loan obligation, claiming in her summary judgment motion that it "was not 'made under any program funded ... in part by ... a non-profit institution' as required by § 523(a)(8)." 149 B.R. at 597. HICA cross-moved for summary judgment, alleging that the loan in question was made under a program which was funded in whole or in part by a nonprofit institution; therefore, the loan was excepted from discharge. *See id.* The bankruptcy court granted the debtor's motion, finding there was "no evidence that any nonprofit institution played a meaningful part in providing funds to the LAL program." *Id.* The Ninth Circuit B.A.P. reversed and remanded, concluding, *inter alia:* (1)"the plain language of § 523(a)(8) indicates that it is the *program* that need be funded by a

nonprofit institution," *id.* at 598; and (2) the Law Access program was a program in which nonprofit institutions played a meaningful part in providing funds, *see id.* Thus, the Ninth Circuit B.A.P. held that the entire Law Access program was the relevant program for purposes of § 523(a)(8), and the requirement for exception from discharge provided by § 523(a)(8) was met. *See id.* at 600.

### D. The Instant Case

■ The Debtor's argument here is essentially the same as the debtor's in *Pilcher*: LAL is a separate, "stand-alone program" from the Law Access program and that none of the parties who participated in the LAL "program" were non-profit entities; thus, LAL falls outside of § 523(a)(8). *See* docs. # 51–1 and # 52–1 at 11. To support this position, Debtor submitted an "Agreement for Initial Processing of Law Plan Loan Applications," dated Sept. 30, 1986. *See* Ex. # 4, attached to docs. # 51–1 and # 52–1.[3] This agreement is a "Related Agreement" to the Law Plan Multiparty Agreement, dated July 1, 1986, to which LSAS and HSCA are parties. *See id.* at 1; *see also, Pilcher,* 149 B.R. at 599 ("The [Multiparty Agreement] defined the various terms and responsibilities of each party, culminating in the Law Access program."). Significantly, in the preamble of the Related Agreement, LSAS is identified as a nonprofit corporation. *See* Ex. # 4, *supra.* Yet, the Debtor directs the Court's attention to Section B.2. of the Related Agreement to highlight that LSAS is receiving compensation for preparing and distributing application booklets to all accredited law schools. What the Debtor apparently fails to understand is that a nonprofit entity is entitled to receive compensation for services it pro-

vides; it is prohibited, however, from distributing any of that income to its members. *See* BLACK'S LAW DICTIONARY 1056 (6th ed. 1990) ("**Non-profit corporation.** A corporation no part of the income of which is distributable to its members, directors or officers."). Thus, the fact that one of the non-profit entities involved in the Law Access program received compensation for services performed in connection with the program does not negate that entity's nonprofit status.

The Court is unpersuaded by the Debtor's arguments. First, the Court finds the LAL "program" to be a part of a larger program: the Law Access program. *See* Ex. # 3, attached to docs. # 51–1 and # 52–1. Second, the evidence presented clearly identifies LSAS as a nonprofit entity. *See* Ex. # 4 at Preamble, attached to docs. # 51–1 and # 52–1. The Debtor's argument that LSAS received compensation is irrelevant to its nonprofit status. In short, the Debtor has been unsuccessful in his attempt to frame the Law Access program as one that is not funded in part by a non-profit institution. *See, e.g.,* Def.'s Stmt. Undisputed Facts ¶¶ 1 and 2, attached to Def.'s Mot. Summ. J.; *cf., Pilcher,* 149 B.R. at 600 (". . . [Debtor's] education loan was obtained through the Law Access program. The Law Access program was partially funded by nonprofit institutions. The requirement for exception from discharge provided by § 523(a)(8) is therefore met, subject to a finding of no hardship.")

On the contrary, there is sufficient evidence in the record to show that the Law Access Program was funded in part by a nonprofit institution. As such, the Law Access Program, including the LALs, falls within the statutory framework of

---

**3.** Again, the Court notes that the Debtor failed to submit the full document for the Court's review.

§ 523(a)(8). Therefore, the Debtor's two Law Access Loans are excepted from discharge.

### III. CONCLUSION

After consideration of the entire record, the Court finds there is no genuine issue as to any material facts. The Debtor's two Law Access Loans were part of the Law Access program, which was funded in part by nonprofit institutions. Thus, the Court finds that these two loans fall within the category of debts that may be excepted from discharge under § 523(a)(8). Therefore, the Defendant is entitled to judgment as a matter of law on this issue. The Defendant's Motion for Summary Judgment is GRANTED, and Debtor's Cross–Motion for Summary Judgment is DENIED.

SO ORDERED.